UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SOLIMAR ECHEVARRIA and
LINNETTE M. CONDE REYES,

        Plaintiffs,

v.                                                       Case No:  6:20-cv-1406-Orl-40DCI

NAVIENT SOLUTIONS, LLC and
INSTITUTE OF TECHNICAL ARTS,
LLC,

        Defendants.
_____/

## ORDER

This cause is before the Court on Defendant Navient Solutions, LLC's ("**Navient Solutions**") Motion to Dismiss (Doc. 7 (the "**Motion**")). Plaintiff filed a Response (Doc. 10), and Navient Solutions filed a Reply (Doc. 13). Upon consideration, Navient Solution's Motion is due to be granted.

**I.**    **BACKGROUND**

On October 27, 2014, Plaintiff Solimar Echevarria obtained loans under the William D. Ford Federal Direct Loan Program ("**Direct Loan**") to fund her education at Defendant Institute of Technical Arts, LLC ("**ITA**"). (*See* Doc. 7, pp. 1–2). The Direct Loan program is a federal student loan program that allows eligible students and parents to borrow directly from the from the U.S. Department of Education ("**DOE**") at participating schools. (*Id.* at p. 2). Ms. Echevarria received a subsidized loan of $3,500 and an unsubsidized loan of $2,000. (Doc. 1-1, p. 6). Plaintiff Linnette M. Conde Reyes also received a $4,958

loan from the Direct Loan program to assist Ms. Echevarria in funding her education at ITA. (*Id.*). Navient Solutions services Ms. Echevarria's and Ms. Reyes' loans. (*Id.*).

Ms. Echevarria attended ITA from October 22, 2014 to July 15, 2015. (*Id.*). In June 2015, the U.S. Inspector General and the DOE conducted a raid of ITA. (*Id.* at p. 7).

Shortly after the raid, on or around July 30, 2015, Ms. Echevarria took a medical leave of absence from ITA. (*Id.*). During Ms. Echevarria's medical leave, ITA notified students via letter of ITA's permanent closure. (*Id.* at pp. 7–8). On September 22, 2015, Ms. Echevarria and Ms. Reyes submitted Loan Discharge Applications to Navient Solutions. (*Id.* at p. 8).

On October 27, 2017, Navient Solutions sent Ms. Echevarria and Ms. Reyes a letter denying their Loan Discharge Applications ("**Denial Letter**"). (Doc. 1-1, p. 9; Doc. 7, p. 2). On June 5, 2020, Ms. Echevarria and Ms. Reyes filed the instant lawsuit against Navient Solutions for breach of contract, claiming that the Denial Letter breached certain discharge provisions contained in their promissory notes. (Doc. 7, p. 3). On August 14, 2020, Navient Solutions filed the instant Motion (Doc. 7), and Plaintiffs responded (Doc. 10).

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To assess the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See id.*; *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016).

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. Moreover, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

### III.   DISCUSSION

"To state a claim for breach of contract, a plaintiff must allege: '(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.'" *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401, 2020

WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)). For a valid contract to exist, the defendant must be a party to the contract. *See Solnes v. Wallis & Wallis, P.A.*, No. 13-61225-CIV, 2013 WL 3771341, at *4 (S.D. Fla. July 18, 2013) (citing *Biscayne Inv. Grp., Ltd. v. Guarantee Management Servs., Inc.*, 903 So. 2d 251, 255 (Fla. 3d DCA 2005); *Morgan Stanley DW, Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004)) ("As a general rule, non-parties to a contract . . . can neither sue nor be sued for breach of a contract to which they were not parties."); *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1281–82 (11th Cir. 2009) (citing *Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715, 720 (11th Cir. 2002); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)) ("Furthermore, it is a tenant of contract law that 'a third-party cannot be bound by a contract to which it was not a party.'").[1]

Here, the Complaint alleges that Navient Solutions and Plaintiffs have a valid contract. But Navient Solutions argues that such a contract does not in fact exist. (Doc. 7, pp. 4–6). Navient Solutions asserts that the DOE was Plaintiffs' lender, and therefore Plaintiffs cannot allege a breach of contract against Navient Solutions. (*Id.*). Plaintiffs argue that privity of contract exists because Navient Solutions is the DOE's agent. (Doc. 10, pp. 2–3, 5–7). Navient Solutions asserts that Plaintiffs did not plead sufficient facts that show Navient Solutions assumed the contract. (Doc. 13).

---

[1] The Higher Education Act, which created and governs the Direct Loan program, does not preempt state law breach of contract claims. *See Lawson-ross v. Great Lakes Higher Edu. Corp.*, 955 F.3d 908, 911–13, 920–24 (11th Cir. 2020); *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1323–24 (M.D. Fla. 2018). Thus, Florida law applies here.

First, Plaintiffs allege that they "entered into a contract with [Navient Solutions] for Federal student loans." (Doc. 1-1, p. 9). However, other portions of the Complaint—including various related exhibits—contradict this statement.[2] For example, the Complaint states that Navient Solutions "makes student loans *backed by*" the DOE. (*Id.* at p. 5) (emphasis added). Likewise, the Complaint states that Plaintiffs "applied for and received . . . [loans] *from the [DOE]*," and Exhibits B and D identify the DOE as the loan provider. (*Id.* at pp. 6, 13, 27). Furthermore, Exhibit C explicitly states that "Direct Loans *are made by* the [DOE]." (*Id.* at p. 20). The Denial Letter also notifies Plaintiffs that the DOE owns their loans:

> You recently requested closed school discharge for your loans. Unfortunately, we can't approve your request . . . Your federal student loans referenced in this letter *are owned by the U.S. Department of Education*. The terms of the federal student loan programs are not determined by Navient, they are established by federal law, in particular by the Higher Education Act of 1965, as amended, and U.S. Department of Education regulations. Among other things, the law and regulations set borrowing limits, interest rates, eligibility for subsidies, repayment plans, capitalization of interest, and loan forgiveness.[3]

---

[2] "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of a Rule 12(b)(6) dismissal." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[3] Plaintiffs' Response points to three sentences in the Denial Letter as support for their argument that Navient Solutions is the DOE's agent: (1) "we can't approve your request"; (2) "[y]our request may be forwarded to the [DOE] . . . for additional review"; and (3) "[a]s your loan servicer, Navient is required to administer your loans on behalf of the [DOE] in accordance with the law." (Doc. 1-1, pp. 59–60; Doc. 10, p. 6). However, as explained *infra*, the fact that Navient Solutions has an agreement with the DOE and performs some functions for the DOE does not automatically make Navient Solutions the DOE's agent or a party to or an assignee of the federal student loan contracts. While the Complaint and its accompanying exhibits should be read broadly in the light most favorable to Plaintiffs, the Court cannot rely solely on three sentences in one exhibit for the proposition that Navient Solutions is contractually

5

(*Id.* at p. 59, 60) (emphasis added). These allegations recognize that the DOE—not Navient Solutions—provides the capital. In other words, these statements show that Navient Solutions is not Plaintiffs' lender, but rather is a facilitator of the Direct Loan program for the DOE. Notably, the Complaint and all of the related exhibits pertain to Plaintiffs' federal loan agreements with the DOE; Plaintiffs do not allege the existence of an independent contract with Navient Solutions. In light of the Complaint's allegations and the plain language of the accompanying exhibits, it is clear that Plaintiffs' contention that they have a contract with Navient Solutions is erroneous.

Second, the Court realizes that the Complaint repeatedly refers to Navient Solutions as Plaintiffs' servicer. (*Id.* at p. 6). But Plaintiffs never allege that Navient Solutions is the DOE's "agent." Plaintiffs also never allege that Navient Solutions is the "assignee" of or a "party" to the federal loan contracts. The Court cannot conclude that a "servicer" is necessarily an "agent" or an "assignee" or a "party" without more factual allegations. *See also First Auto. Serv. Corp. N.M. v. First Colonial Ins.*, No. 3:07-cv-682, 2008 WL 816973, at *5 (M.D. Fla. Mar. 25, 2008) (stating that Florida law requires clear assignment of contractual obligations to impose liability on a disclosed principal's agent).

Finally, Plaintiffs confuse their federal student loan contracts with the DOE and the DOE's servicing contract with Navient Solutions. In Exhibit C, the DOE states: "We contract with servicers to service, answer questions about, and process payments on Direct Loans." (*Id.* at p. 20). The Denial Letter explains the relationship between Plaintiffs,

---

bound to Plaintiffs, particularly when the Complaint itself does not allege that Navient Solutions is an agent, assignee, or party.

Navient Solutions, and the DOE: "As your loan servicer, Navient is required to administer your loans on behalf of the [DOE] in accordance with the law." (*Id.* at p. 60). These exhibits demonstrate that the DOE has a separate contract with Navient Solutions for the facilitation of federal student loans, but the fact that the DOE and Navient Solutions are contractually bound does not mean that Navient Solutions is automatically a party to or an assignee of the contract between the DOE and Plaintiffs.

Plaintiffs cite two non-binding cases in support of its contention that a borrower can state a breach of contract claim against a loan servicer if all or portions of the contract have been assigned to the loan servicer. Both cases state: "All of these cases make it clear that a servicer is not automatically in privity with a borrower where the servicer was not also the original lender. Privity will depend on the nature of the relationship between the servicer and the borrower and whether there has been a valid assignment of contractual duties to the servicer." *Mazzei v. Money Store*, 308 F.R.D. 92, 110 (S.D.N.Y. 2015); *see Thomas v. Ocwen Loan Servicing*, No. 2:19cv170, 2020 U.S. Dist. LEXIS 95337, at *8–10 (E.D. Va. Mar. 9, 2020). These cases do not help Plaintiffs because Plaintiffs never alleged that Navient Solutions is the DOE's agent or that there has been a valid assignment to Navient Solutions. In fact, these cases support the Court's position that it cannot automatically assume that Navient Solutions is in privity of contract with Plaintiffs. As stated *supra*, the bare allegations that Navient Solutions is Plaintiffs' "servicer" and that Navient Solutions facilitated Plaintiffs' federal loans for the DOE is insufficient to allege a principal-agent relationship between the DOE and Navient Solutions or a valid assignment of contractual duties to Navient Solutions.

Notably, under Florida law, "[i]t is generally recognized that an agent acting within the course and scope of its agency relationship with a disclosed principal is not liable for the debts or obligations of the principal arising from contracts which the agent may negotiate or execute on behalf of such disclosed principal." *First Auto. Serv. Corp. N.M.*, 2008 WL 816973, at *5 (quoting *Sussman v. First. Fin. Title Co. of Fla.*, 793 So. 2d 1066, 1068 (Fla. 4th DCA 2001)); *see Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 965 (Fla. 4th DCA 2002) (citation omitted) ("In the absence of other facts, the inference is that the parties have agreed that the principal is, and the agent is not, a party."). Here, Plaintiffs do not allege that the DOE was an undisclosed principal, and the Complaint makes several assertions that show Plaintiffs understood that the DOE was their lender. (*See* Doc. 1-1). Therefore, even if the DOE and Navient Solutions have an agent-principal relationship, Florida law bars Plaintiffs' breach of contract claim against Navient Solutions unless they allege enough facts that Navient Solutions assumed liability.

Thus, even reading the Complaint and the accompanying exhibits as broadly as possible, Plaintiffs fail to state a claim for relief for breach of contract. *See Iqbal*, 556 U.S. at 678.

**IV.   CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Navient Solutions, LLC's Motion to Dismiss (Doc. 7) is **GRANTED**;

2. The Complaint is **DISMISSED WITHOUT PREJUDICE**; and

3. On or before October 28, 2020, Plaintiffs may file an Amended Complaint consistent with the directives of this Order, if they believe they can do so in accordance with Rule 11; and

4. Failure to timely file an Amended Complaint in accordance with the requirements of this Order will result in closure of this action without further notice.

**DONE AND ORDERED** in Orlando, Florida on October 14, 2020.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties